513 So.2d 544 (1987)
STATE of Louisiana, Appellee,
v.
Billy Ray SMITH, Appellant.
No. 19178-KW.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
*545 Dennis G. Stewart, Winnsboro, for appellant.
William J. Guste, Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton Rouge, William R. Coenen, Jr., Dist. Atty., E. Rudolph McIntyre, Jr., Asst. Dist. Atty., Winnsboro, for appellee.
Before HALL, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Billy Ray Smith, applied for supervisory writs from the trial court denial of his application for post-conviction relief. The defendant claimed that his pleas of guilty to aggravated rape and armed robbery were invalid because he was not properly informed of the minimum and maximum periods of incarceration to which he might be sentenced, and he was not advised nor did he understand that the terms of imprisonment were required by statute to be served without benefit of parole, probation or suspension of sentence. The defendant also claimed ineffective assistance of trial counsel. We granted the defendant's writ application and instructed the parties to submit briefs addressing the claims raised by the defendant.
For the following reasons, we find that the defendant's guilty pleas were not made knowingly and intelligently. We therefore reverse the decision of the trial court denying the defendant's application for post-conviction relief and set aside the defendant's convictions and sentences and remand *546 this case to allow the defendant to plead anew.

FACTS
The defendant was originally charged by indictment with armed robbery and aggravated rape. The defendant was charged with entering a doughnut shop, robbing the clerk at gunpoint and then raping her while continuing to threaten her with the gun. On June 13, 1986, the defendant withdrew his former pleas of not guilty and entered pleas of guilty to both charges. During the guilty plea colloquy, the defendant was informed of his right to trial by jury, his right of confrontation and his right against compulsory self-incrimination. The defendant was also informed that the "maximum" sentence for aggravated rape is life imprisonment and the maximum sentence for armed robbery is 99 years imprisonment at hard labor.
The defendant complains he was not informed that the offense of aggravated rape carried a mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. He also objects that he was not informed that the penalty for armed robbery included a five year mandatory minimum sentence at hard labor and that any sentence must necessarily be served without benefit of parole, probation or suspension of sentence. At the sentencing hearing, prior to imposition of sentence, the defendant personally addressed the court, apparently objecting to the sentence to be imposed. However, the court stated that the defendant would have an opportunity on appeal to assert his claim.
The defendant was sentenced to life imprisonment for the charge of aggravated rape and was sentenced to serve 50 years imprisonment at hard labor for the charge of armed robbery. Both sentences were to be served without benefit of parole, probation, or suspension of sentence. The sentences were also ordered to be served consecutively.
Following his sentencing, the defendant obtained new counsel and a motion for out-of-time appeal was filed with this court. We remanded the case to the district court for consideration as an application for post-conviction relief in accordance with State v. Counterman, 475 So.2d 336 (La.1985).
The defendant asserted in his application for post-conviction relief that his pleas of guilty were not entered knowingly and intelligently because he was under the mistaken impression that, in exchange for his pleas of guilty to both offenses with which he was charged, he would receive concurrent sentences of 20 years imprisonment at hard labor. The defendant also claims that he was denied effective assistance of counsel.
On March 25, 1985, the district court held a hearing and denied the defendant's application for post-conviction relief, finding that at the time the defendant entered his guilty pleas, he was "interrogated at length" and "the length of the sentence was brought out in the interrogation."
The defendant then applied for supervisory writs from the trial court's denial of his application for post-conviction relief. We granted writs and instructed both the defendant and the State to brief the issue of whether the pleas were knowingly and intelligently made in light of the trial court's failure to inform the defendant that by pleading guilty to the charge of aggravated rape he would receive a mandatory life sentence without benefit of parole, probation or suspension of sentence, and the effect of the failure of the trial court to inform the defendant that armed robbery carried a minimum sentence of five years and any sentence imposed up to the ninety-nine year maximum for armed robbery would be without benefit of probation, parole or suspension of sentence.

GUILTY PLEA
The defendant contends that because he was not fully informed of the penalties for the offenses to which he pled guilty, his guilty pleas were not made knowingly and intelligently. The defendant's argument has merit.
The entry of a guilty plea must be a free and voluntary choice on the part of a defendant. State v. Nuccio, 454 So.2d 93 *547 (La.1984); Kennedy v. Maggio, 725 F.2d 269 (U.S. 5th Cir.1984). Generally, a guilty plea induced by promises and made without an understanding of the consequences will not sustain a conviction. State v. Dunn, 408 So.2d 1319 (La.1982). Due process requires that pleas of guilty be voluntary and intelligent relinquishments of known rights. The court must make an independent determination of whether the defendant's plea is made knowingly and intelligently through a colloquy wherein the defendant is questioned about his decision and the constitutional rights he is waiving. State v. Age, 417 So.2d 1183 (La.1982); State v. Buckenburger, 428 So.2d 966 (La.App. 1st Cir.1983).
For a guilty plea to be found valid, there must be a showing that the defendant was informed of and waived his constitutionally guaranteed right to trial by jury, right of confrontation and right against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel Jackson v. Henderson, 255 So.2d 85 (La.1971).
However, the entry of a knowing and intelligent plea of guilty involves more than an understanding and a waiver of the basic triad of rights. In determining whether the defendant's plea is knowing and voluntary, the court must not only look to the colloquy concerning the waiver of rights, but may also look at other factors which may have a bearing on the decision. State ex rel LaFleur v. Donnelly, 416 So.2d 82 (La.1982); State v. Galliano, 396 So.2d 1288 (La.1981); State v. Buckenburger, supra.
Among the reasons the defendant urges for vacating his pleas of guilty is the fact that he was not informed that the offense of armed robbery carried a mandatory minimum sentence of five years at hard labor without benefit of parole, probation or suspension of sentence. Because we vacate the defendant's pleas of guilty and his sentences on other grounds, we deem consideration of this argument unnecessary.[1]
The defendant next complains that he was not informed by the trial court that the penalty for aggravated rape is a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence, and that any sentence imposed for the armed robbery charge must also be served without benefit of parole, probation or suspension of sentence. Based upon this lack of information, the defendant contends he should be allowed to withdraw his pleas of guilty as not being entered knowingly and intelligently. This portion of the defendant's argument has merit.
In addition to a waiver of the right to trial by jury, the right of confrontation, and the right against compulsory self-incrimination, in order to make a knowing and intelligent decision to plead guilty the defendant must be apprised of the possible range of sentences for the offense to which he pleads guilty. State v. Domangue, 476 So.2d 986 (La.App. 1st Cir.1985); State ex rel Curry v. Guillory, 441 So.2d 204 (La.1983); State ex rel LaFleur v. Donnelly, supra; Fortia v. United States, 456 F.2d 194 (5th Cir.1972); State ex rel Hill v. United States, 452 F.2d 664 (5th Cir.1971); United States v. Perwo, 433 F.2d 1301 (5th Cir.1970); State of Louisiana ex rel Gwin v. Dees, 410 F.2d 321 (5th Cir.1969), cert. denied 396 U.S. 918, 90 S.Ct. 241, 24 L.Ed.2d 196 (1969); Tucker v. United States, 409 F.2d 1291 (5th Cir.1969). Therefore, a defendant must be apprised of the maximum penalty exposure in order to enter a knowing and intelligent plea of guilty. State ex rel LaFleur v. Donelly, *548 supra. The defendant must certainly be advised that upon his plea of guilty for aggravated rape he will mandatorily be sentenced to life in prison without any possibility of parole, probation or suspension of sentence.
The question of whether a defendant must be told that the sentence to be imposed must be served without eligibility for parole, probation or suspension of sentence is not uniformly settled. Under the federal scheme, there is no requirement that a defendant be so informed. LeBlanc v. Henderson, 478 F.2d 481 (5th Cir.1973), cert. denied 441 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974); Trujillo v. United States, 377 F.2d 266 (5th Cir.1967), cert. denied 389 U.S. 858, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967).[2] The reasoning appears to be that ineligibility for parole, probation or suspension of sentence is a collateral consequence of a plea of guilty (such as sentence enhancement as a multiple offender) and the trial court is not required to inform the defendant as to collateral consequences of a plea of guilty. Martin v. Blackburn, 606 F.2d 92 (5th Cir.1979), cert. denied 446 U.S. 911, 100 S.Ct. 1841, 64 L.Ed.2d 265 (1980); Johnson v. Dees, 581 F.2d 1166 (5th Cir.1978).
However, the Louisiana Supreme Court has specifically stated that knowledge of ineligibility for parole, probation or suspension of sentence is an important factor in deciding to enter a knowing and intelligent plea of guilty. In State ex rel LaFleur v. Donnelly, supra, the defendant, under a plea bargain agreement, entered a plea of guilty to several charges including possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1. The defendant was under the mistaken impression that, at some point, he would be eligible for parole. However, it was later learned that a sentence for possession of a firearm must be served without benefit of parole, probation or suspension of sentence. The Louisiana Supreme Court allowed the defendant to withdraw his plea of guilty as not being entered knowingly and intelligently. The court reasoned that:
A full explanation of the sentence provided for an offense by the legislature seems particularly important when, as part of the penalty for the offense, parole eligibility is denied, because the accused may be far more concerned about the possibilities for early release than with any abstract right to confront his accusers at trial.
The Louisiana Supreme Court again relied on this reasoning in State ex rel Curry v. Guillory, 441 So.2d 204 (La.1983). In that case, a defendant entered a plea of guilty on the advice of his attorney and was sentenced to two years at hard labor. The defendant's attorney was under the mistaken belief that the two year sentence marked the defendant's final release date. The attorney was unaware that the defendant was on probation for another offense for which he had been sentenced to eight years at hard labor and that as a consequence of his guilty plea the defendant's probation for the prior offense would be revoked. In that case, the Louisiana Supreme Court remanded the case to the trial court to allow the defendant the option of withdrawing his guilty plea.
Although the federal scheme refers to ineligibility for parole as a collateral consequence of a guilty plea, that concept is not applicable here. In this case, the sentencing exposure to which the defendant subjected himself upon his pleas of guilty was a direct, rather than a collateral, consequence of those pleas. Pursuant to the penalty provisions of the statutes under which the defendant plead guilty, LSA-R.S. 14:42 (Aggravated Rape) and LSA-R.S. 14:64 (Armed Robbery), the legislative mandate that the sentences be served without benefit of probation, parole or suspension of sentence is as much a part of the sentence as the length of time the court may order the defendant to serve, whether in years or mandatorily for life. The ineligibility for parole, probation or suspension of sentence are parts of the penalty for *549 each crime charged in this case and, as a direct consequence of the plea, the defendant should be fully informed of the exposure before the plea is accepted.[3]State ex rel LaFleur v. Donnelly, supra.
Therefore, pursuant to the guidance of the high court of this state, we hold that the failure of the trial court to inform the defendant of the mandatory life sentence which it was required to impose, as well as the defendant's ineligibility for parole, probation or suspension of sentence for both offenses to which he pled guilty in this case, renders his pleas invalid as not being knowingly and intelligently entered.
The record shows that the defendant was not informed by the trial court, prior to the entry of the guilty plea, that the crime of aggravated rape carried a mandatory life sentence without benefit of parole, probation or suspension of sentence, nor was he informed that any sentence imposed for armed robbery must necessarily be served without benefit of parole, probation or suspension of sentence. Apparently, the trial court was initially unsure of the penalty for aggravated rape at the time the guilty plea was entered, and it is certainly clear that the defendant was unaware of the mandatory penalty for the commission of that crime. When the defendant plead guilty, the following colloquy took place between the defendant and the court:
Q. Are you satisfied your attorney has fully considered your case and any possible defenses you may have?
A. Yes, sir.
Q. Are you satisfied he has competently advised you?
A. Yes, sir.
Q. Do you understand the nature of the charge against you?
A. Yes, sir.
Q. They are that on or about the 30th day of August, 1985 you did, while armed with a dangerous weapon rob Mary Mobley, and that on or about the 30th day of August, 1985, you did commit aggravated rape upon Mary Mobley.
A. Yes, sir.
Q. Do you understand that?
A. Yes, sir.
Q. Is that charges (sic) you desire to plead guilty to?
A. Yes, sir.
Q. Ninety-nine years on both of these, Mr. McIntyre?
MR. MCINTYRE:
One of them is life, Your Honor.
MR. ELLERMAN:
Aggravated rape is life.
Q. Do you understand if you plead guilty it'll be the duty of the Court to adjudge you guilty and the maximum sentence which the Court might impose will be imprisonment for life on the charge of aggravated rape and a period of up to ninety-nine years on the armed robbery?
A. Yes, sir.
This colloquy shows that the defendant was misinformed that the maximum sentence for aggravated rape was life imprisonment, rather than being correctly informed that the mandatory sentence was life imprisonment, without benefit of parole, probation or suspension of sentence. It is also clear that the defendant was not informed that the sentences for both offenses must necessarily be served without benefit of parole, probation or suspension of sentence. Had the trial judge properly advised the defendant of the mandatory sentencing provisions, of the statutes under which he was pleading, there could have been no misunderstanding by the defendant of the consequences of his guilty pleas when they were tendered to the trial court.
At the hearing on defendant's application for post conviction relief, the defendant *550 testified that on the day he pled guilty, his attorney stated that he had talked to the sentencing judge and the judge had stated he would sentence the defendant to 20 years on each count. The defendant asserted that his attorney never told him that aggravated rape carried a mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence.
Even though the trial judge did not find as a fact that the defendant's attorney had promised him a specific sentence of twenty years on each charge, nevertheless, there is no evidence that the defendant was advised that the penalty provision of the statutes under which he was sentenced mandated that he could not become eligible for parole, or that the sentence for aggravated rape was a mandatory life sentence, without benefit or parole, probation or suspension of sentence. Further, the record indicates that immediately before imposition of sentence, the defendant apparently attempted to object to the sentence to be imposed, perhaps based upon his previous understanding of his sentence exposure. The defendant's appointed counsel was not present at the time of sentence, the defendant being represented by his present counsel who was "standing in" for his originally appointed counsel. The following colloquy transpired:
THE COURT:
Madam Clerk, this is the case of the State of Louisiana v. Billy Ray Smith. Will both counsel make an appearance for the record, please?
MR. MCINTYRE:
E. Rudolph McIntyre, Jr. Assistant District Attorney.
MR. STEWART:
I'm Dennis G. Stewart standing in for Donnie Ellerman, who is appointed to represent the defendant.
. . . .
THE COURT:
All right, sir. Mr. Stewart, do you have anything you would like to say?
MR. STEWART:
No, Your Honor. I think the defendant has something he wanted to say about the sentence.
MR. SMITH:
I would like to talk to my lawyer, Donnie Ellerman, before I get sentenced.
THE COURT:
For what reason, Mr. Smith?
MR. SMITH:
Cause he told me, he told me what I'm getting, and now it's a different story.
THE COURT:
He what now?
MR. SMITH:
He told me what I will be getting, now it's a different story.
THE COURT:
He told you what you'd be getting?
MR. SMITH:
Yeah, what he can get me.
THE COURT:
Well, I don't know how he did that cause I'm the only one that decides what you get and as a matter of fact, in one case I don't even have any discretion over what you're getting. We're going to sentence you here today and if you want to talk to your lawyer, you can talk to him later. And I'm certain you're going to be filing numerous appeals so anything you've got to say can be brought out at that time. Anything else you'd like to say?
MR. SMITH:
No.
. . . .
At the post-conviction relief hearing the defendant's former counsel was called to testify. His testimony tended to substantiate the defendant's claim that he was never informed of the mandatory sentence for aggravated rape, and there is no indication that the defendant was advised that both offenses contained penalty provisions prohibiting parole, probation or suspension of sentence. At the hearing, the defense counsel testified as follows:
*551 Q. Do you remember ever specifically telling him that, uh, that life imprisonment was mandatory on the aggravated rape charge?
A. The specific conversation, Dennis, I don't remember, no. I'll be perfectly honest. I know that I did not tell him that it was anything short of life imprisonment, mandatory. I didn't indicate to him that it was anything less.
The record before this court reveals that the defendant was not adequately informed by defense counsel or the trial court of the full consequences of entering pleas of guilty to the offenses for which he was charged. Defense counsel failed to adequately inform the defendant of the full penalty for the offenses to which he pled guilty. The defendant's misunderstanding of the consequences of his pleas was also induced in part by the lack of information or misinformation given by the sentencing court. For those reasons, we must reverse the decision of the trial court denying the defendant's application for post-conviction relief and order that the defendant's pleas of guilty to and sentences for the crimes of aggravated rape and armed robbery be vacated.
Because we find that the defendant's entry of pleas of guilty to the offenses charged were not made knowingly and intelligently, and because we vacate those pleas and sentences, we do not reach the defendant's contention in his application for post-conviction relief that he did not receive effective assistance of counsel.[4]

CONCLUSION
For the above stated reasons, we reverse the decision of the trial court denying the defendant's application for post-conviction relief and vacate the defendant's pleas of guilty to and sentences for the crimes of aggravated rape and armed robbery and remand to allow the defendant to plead anew and for further proceedings in accordance with law.
REVERSED AND VACATED. REMANDED.
NOTES
[1] We note that under the federal rule pertaining to guilty pleas, a defendant must be informed of the mandatory minimum penalty provided by law, if any, as well as the maximum penalty. Fed.R.Cr.P. Rule 11(c)(1). However, the present case is governed by state rather than federal procedural law. Cf. State v. Galliano, supra; State v. McDonald, 390 So.2d 1276 (La.1980).

In addition, the Louisiana Judge's Bench Book, (Guilty Pleas p. 13) for criminal proceedings provides:
The judge should advise the defendant of mandatory provisions which will directly affect the defendant's sentence, such as mandatory minimum sentences and ineligibility for parole.
[2] The provision that a defendant need not be informed of ineligibility for parole under the federal scheme is distinguished from the requirement that a defendant must be advised that a sentence may include a special parole term. Fed.R.Cr.P. Rule 11(c)(1).
[3] The decision in the instant case does not apply to situations where pleas of guilty are entered pursuant to criminal statutes which do not provide for mandatory sentences and where there are a myriad of collateral and indirect consequences resulting from guilty pleas under those discretionary sentencing statutes, such as sentence enhancement or other factors which may affect parole eligibility.
[4] We do not address the question of whether the defendant was properly represented at the time of sentencing where another attorney was "standing in" for the defendant's appointed attorney without the defendant's agreement to that procedure on the record and a waiver by the defendant of the presence of his own attorney who had represented him throughout the proceedings.