810 So.2d 1106 (2002)
STATE of Louisiana
v.
Arnoldo MONTALBAN.
No. 2000-KP-2739.
Supreme Court of Louisiana.
February 26, 2002.
*1107 Richard P. Ieyoub, Attorney General, Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Gretna, for Applicant.
Ivan A. Orihuela, New Orleans, Counsel for Respondent.
KNOLL, Justice.[*]
This case involves the question of whether the defendant, Arnoldo Montalban, can withdraw his guilty plea to aggravated criminal damage to property, a felony, because he alleges that his defense counsel did not advise him that his plea could *1108 subject him to deportation by the United States Immigration and Naturalization Service. For the following reasons, we find that possible deportation is a collateral consequence of the defendant's guilty plea and need not be explained as a requirement for a valid guilty plea. We further find that neither prong of the test articulated in Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is met, thus obviating the need to remand for a determination of the effectiveness of counsel.

FACTS
The defendant, who is nineteen years of age and a native of Costa Rica, moved to the United States at the age of three, and has resided in this country ever since. On November 15, 1999, the defendant pleaded guilty to aggravated criminal damage to property, a violation of LA.REV.STAT. ANN. § 14:55.[1] The trial court sentenced the defendant to three years imprisonment, but suspended the sentence and placed him on active probation for three years. On April 24, 2000, the defendant filed a motion in the trial court seeking to vacate his guilty plea. In his motion, the defendant alleged that he entered the guilty plea unknowingly and involuntarily, contending that his counsel did not inform him that his plea could result in his deportation.[2] The defendant further contended that because of these deficiencies he received ineffective assistance of counsel. The trial court denied the defendant's motion, finding that defendant understood the Boykin form that he signed and that defendant, who had lived most of his life in the United States, could have avoided the possibility of deportation if he had become a United States citizen.
On application for supervisory writs, the Court of Appeal, Fifth Circuit, granted the writ application and vacated defendant's guilty plea. It reasoned that "the failure to inform the defendant of the possibility of deportation precluded the entry of a knowing and intelligent plea." State v. Montalban, 00-1257 (La.App. 5 Cir. 6/27/00). We granted the State's writ application. State v. Montalban, 00-2739 (La.9/21/01), 797 So.2d 54.

DISCUSSION
The defendant argued that his guilty plea should be vacated because it was entered unknowingly and unintelligently without knowledge that entry of his guilty plea could precipitate deportation. He further contended that he received ineffective assistance of counsel because his attorney failed to inform him of the deportation consequences. To the contrary, the State contends that neither state nor federal law requires that a defendant be advised that deportation may be a collateral consequence of the guilty plea.
The entry of a guilty plea must be a free and voluntary choice on the defendant's part. State v. Nuccio, 454 So.2d 93 (La.1984). Due process requires that pleas of guilty be voluntary and intelligent relinquishments of known rights. *1109 The court must make an independent determination of whether the defendant's plea is made knowingly and intelligently through a colloquy wherein the defendant is questioned about his decision and the constitutional rights he is waiving. State v. Age, 417 So.2d 1183 (La.1982). A court may not set aside a guilty plea after sentence is imposed unless the plea is constitutionally deficient. State v. Smith, 406 So.2d 1314, 1315 (La.1981).[3]
For a guilty plea to be valid, there must be a showing that the defendant was informed of and waived his constitutionally guaranteed right to trial by jury, right of confrontation, and right against self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971). In addition, LA.CODE CRIM. PROC. ANN. art. 556.1 requires[4] the trial court to inform the defendant of:
(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
(2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if financially unable to employ counsel, one will be appointed to represent him.
This Court has already stated that the possible change in immigration status is a collateral consequence of a guilty plea that does not render the plea involuntary. State v. Tran, 2000-2471 (La.6/1/01), 793 So.2d 172, 173, relying on United States v. Osiemi, 980 F.2d 344, 349 (5th Cir.1993) and State v. Figueroa, 639 A.2d 495 (R.I. 1994).
A collateral consequence is not related to the length of sentence imposed under the plea agreement. United States v. Romero-Vilca, 850 F.2d 177 (3rd Cir. 1988). See, e.g., loss of the right to vote, LA. CONST. ANN. ART. I, § 10(B)(1)(2), and denial of the right to hold a commission in the armed services.[5] As applicable herein, deportation is the result of a separate civil administrative proceeding, 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 8 U.S.C. 1227(a)(2)(A)(II), not a consequence that *1110 the sentencing judge imposes as part of the guilty plea. Michel v. United States, 507 F.2d 461 (2nd Cir.1974). Because deportation is a collateral consequence of a guilty plea, it was unnecessary for defense counsel to explain that possibility to the defendant to insure that the guilty plea was free and voluntary. See Osiemi, 980 F.2d at 349; United States v. Gavilan, 761 F.2d 226 (5th Cir.1985); United States v. Banda, 1 F.3d 354 (5th Cir.1993); Figueroa, 639 A.2d at 499 (R.I.1994).
Although this Court has emphasized the importance of a defendant's knowing the maximum penalty that may result from his pleading guilty, the two primary cases the defendant relies upon for that proposition, State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La.1982) and State ex rel. Curry v. Guillory, 441 So.2d 204 (La.1983), can be factually distinguished. In LaFleur, we found that defendant's guilty plea was not knowingly and intelligently entered because his attorney misinformed him of his parole eligibility. Similarly, in Curry, we allowed a defendant to withdraw his guilty plea because his attorney mistakenly informed him of the maximum sentence. Unlike those two cases which involved information directly related to the sentence imposed, "[d]eportation ... [is] not the sentence of the court which accepted the plea but of another agency over which the trial judge has no control and for which he has no responsibility." Michel, 507 F.2d at 465.
In Strickland, the United States Supreme Court set out a two-prong test for proving ineffective assistance of counsel. Strickland, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Under Strickland, for a defendant to establish that he received ineffective assistance of counsel, he must show (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-88, 694, 104 S.Ct. 2052. In addition to proving that defendant's attorney's representation fell below the standard of reasonableness, it is incumbent upon the defendant in the context of a guilty plea to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); see also State v. Washington, 491 So.2d 1337, 1338-39 (La.1986).
In the present case, defense counsel's representation did not fall below an objective standard of reasonableness as required under Strickland. As enunciated above, it was unnecessary for defense counsel to explain to the defendant that the possibility of deportation existed to insure that the guilty plea was free and voluntary because deportation is a collateral consequence of a guilty. Accordingly, the defendant has failed to show that defense's counsel's representation bell below an objective standard of reasonableness as required under Strickland.
Moreover, a reasonable probability did not exist, as required in Hill, that, but for defense counsel's failure to advise of deportation, the result of this criminal proceeding would have been different. As a result of this plea bargain agreement, the defendant avoided a potential fine of not more than $10,000 and/or imprisonment of not more than 15 years. Instead, the defendant benefitted from his plea agreement and received a substantially less onerous punishment, i.e., a suspended three year sentence and three year period of probation. Under the provisions of 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 8 U.S.C. 1227(a)(2)(A)(II), defendant's conviction of a crime that carried a possible sentence of *1111 more than one year alone raised the specter of deportation.

DECREE
For the foregoing reasons, we reverse the decision of the Court of Appeal, Fifth Circuit. In accordance with our determination hereinabove, we reinstate the trial court's denial of defendant's motion to vacate his guilty plea.
REVERSED.
JOHNSON, J., dissents.
CALOGERO, C.J., dissents and assigns reasons.
CALOGERO, Chief Justice dissenting and assigning reasons.
While I agree with the majority that deportation is a collateral consequence of defendant's pleading guilty, I would remand this case to the district court to conduct an evidentiary hearing based on the effectiveness of the defendant's counsel. Under the Sixth Amendment to the United States Constitution, defendants are guaranteed the right to the effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The United States Supreme Court recognized the right to the effective assistance of counsel in relation to the entering of a guilty plea in Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Similarly, this court stated in State v. Beatty, 391 So.2d 828, 831 (La.1980) "When a defendant enters a counseled plea of guilty, this court will review the quality of counsel's representation in deciding whether the plea should be set aside." We characterized the counsel's role at the guilty plea stage as "absolutely critical in assuring that the defendant is able to weigh his options intelligently." Id. Furthermore, several courts have held that an attorney has a duty to advise a client of the immigration consequences of a guilty plea. See Wallace v. Reno, 24 F.Supp.2d 104, 110 (D.Mass.1998); Mojica v. Reno, 970 F.Supp. 130, 177 (E.D.N.Y.1997); People v. Pozo, 746 P.2d 523, 529 (Colo. 1987); Williams v. State, 641 N.E.2d 44, 48-49 (Ind.Ct.App.1994).
The United States Supreme Court set out the standard for proving ineffective assistance of counsel in a two-prong test in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). According to Strickland, for a defendant to show that he received ineffective assistance of counsel, he must show 1) "counsel's representation fell below an objective standard of reasonableness" and 2) "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-88, 694, 104 S.Ct. 2052. The United States Supreme Court applied this standard in the context of a guilty plea in Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In addition to proving unreasonable performance, the defendant must also show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59, 106 S.Ct. 366. This court adopted the Strickland and Hill tests in State v. Washington, 491 So.2d 1337, 1338-39 (La.1986).
In analyzing the first prong of the Strickland test, whether defendant's attorney's representation fell below the standard of reasonableness, it is important to note that this court has emphasized the importance of a defendant's knowing the maximum penalty that may result from his pleading guilty. In State ex rel. LaFleur v. Donnelly, 416 So.2d 82, (La.1982), this court recognized that, while it is important to explain to the accused the elements of the offenses of which he is charged, as well *1112 as the rights he will waive by pleading guilty, it is probably more important to the defendant's decision to plead guilty that he understand the maximum penalty exposure. Id. at 84. In LaFleur, defendant's attorney erroneously informed him that if he pled guilty and accepted a six year plea bargain, he would be eligible for parole after two years. This court found that defendant was justified in believing that he would be eligible for parole in two years and that he pleaded guilty based in part on that misconception. As a result, while defendant's guilty plea was voluntary, it was not knowingly and intelligently entered. Id.
Furthermore, in State ex rel. Curry v. Guillory, 441 So.2d 204 (La.1983), this court remanded a defendant's case to the district court, allowing him to withdraw his guilty plea because his attorney advised him to enter the plea under the mistaken impression that defendant would serve a maximum of two-years. In reality, the plea would also have automatically caused revocation of his parole on a prior conviction, and caused the need to serve an additional eight years in prison.
The reasonableness of an attorney's representation is a question of fact to be determined on a case-by-case basis. In analyzing the reasonableness of the representation, a court should consider whether defendant's counsel knew or should have known that deportation was a serious concern of the client's, and should also consider the attorney's treatment of that concern when advising his client, including whether the attorney failed to provide his client with information or, on the other hand, provided his client with incorrect information. However, because the reasonableness of defendant's attorney's representation is a fact-intensive question, and this defendant has not had the opportunity to present evidence relating to this issue,[1] I would remand this case to the district court to conduct an evidentiary hearing and to determine whether defendant's attorney's representation fell below a standard of reasonableness.
Furthermore, according to the second prong of the Strickland and Hill tests, a finding that defendant's attorney's representation fell below the standard of reasonableness does not render the attorney's performance constitutionally ineffective absent a finding of prejudice to the defendant. Based on this, in order to prove ineffective assistance of counsel, along with proving the unreasonableness of his attorney's representation, defendant also must prove that, had his attorney advised him of the possible deportation proceedings, he would not have pleaded guilty and would have insisted on going to trial.
Criminal defendants must consider multiple possible consequences before deciding whether to plead guilty or proceed to trial. Although the significance of the possibility of deportation may be different in every case, deportation may well be more severe than a prison sentence, or a suspended prison sentence as in this case, and may result in separation from family or in the "loss of property or life; or of all that makes life worthwhile." Williams v. State, 641 N.E.2d 44, 49 (Ind.App. 5 Dist. 1994); See also Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922).
In this case, defendant pled guilty to the crime with which he was charged, not to a lesser offense, and he received a bargained for suspended sentence of three years, *1113 with probation. The deportation consequence of his guilty plea may well, to him, have been more severe than the risk of a sentence of up to fifteen years, his maximum exposure.[2] Therefore, it is very possible that in this case, defendant may not have pleaded guilty had he known of the possibility of deportation. Accordingly, I would remand this case to the district court to also determine whether defendant would have pleaded guilty had his attorney advised him of the deportation that might follow his conviction.
For these reasons, I would vacate the judgment of the court of appeal and remand this case to the district court to conduct an evidentiary hearing, and determine whether under Strickland and Hill, defendant's guilty plea should be vacated based upon ineffective assistance of counsel.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] LA.REV.STAT. ANN. § 14:55 provides as follows:

Aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion.
Whoever commits the crime of aggravated criminal damage to property shall be fined not more than ten thousand dollars, imprisoned with or without hard labor for not less than one nor more than fifteen years or both.
[2] Under 8 U.S.C. 1227(a)(2)(A)(iii) and 8 U.S.C. 1227(a)(2)(A)(II) an alien may be deported when he/she has been convicted of a crime that carries a possible sentence of more than one year.
[3] There is a fundamental societal and judicial interest in the finality of guilty pleas. As noted in United States v. Timmreck, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979):

"`Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.'"
Timmreck, 441 U.S. at 784, 99 S.Ct. 2085 (quoting United States v. Smith, 440 F.2d 521, 528-29 (7 Cir.1971)).
[4] In State v. Guzman, 99-1528 (La.5/16/00), 769 So.2d 1158, we nevertheless recognized that harmless error analysis was applicable in an instance where the trial court failed to inform the defendant before accepting his guilty plea about the mandatory minimum sentence and that conviction could be used to enhance the penalty for subsequent offenses.
[5] To hold otherwise would open Pandora's box and would expose future defense counsel to claims of ineffective assistance under a variety of instances which involve collateral consequences. In addition to those referenced above, a like result may involve inability of a felon to hunt because of firearm restrictions, holding public office, eligibility to perform jury duty, ineligibility for certain employments.
[1] The trial court conducted a hearing on defendant's motion to vacate the guilty plea. However, no evidence was presented, and defendant was not present at the hearing because he was being held by the Immigration and Naturalization Service in Oakdale, Louisiana.
[2] Defendant, who was born in Costa Rica, moved to the United States at the age of three, and has resided in this country since that time.